# 15-1016-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

BETTY HARRIS-CLEMONS,

*Plaintiff-Appellee,*

*v.*

CHARLY TRADEMARKS LIMITED,

*Defendant-Appellant,*

*and*

CHARLY ACQUISITIONS LIMITED, a Nevisian limited liability company,
SONY MUSIC ENTERTAINMENT, INC.,

*Defendants.*

_____

*On Appeal from the United States District Court
for the District of Connecticut (Hartford)*

## BRIEF AND SPECIAL APPENDIX FOR DEFENDANT-APPELLANT

BOUTIN & ALTIERI, P.L.L.C.
1261 Post Road
Fairfield, Connecticut 06824
203-292-6882

ONE LLP
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, California 92660
949-502-2870

*Attorneys for Defendant-Appellant*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure,

Intervenor CHARLY TRADEMARKS LTD., by its attorneys, submits the

following identification of corporate parents and publicly held corporations that

own 10% or more of Charly Trademarks Ltd.'s stock:


NONE

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS.................................................................................... ii

TABLE OF AUTHORITIES ............................................................................. iv

STATEMENT OF JURISDICTION.....................................................................1

STATEMENT OF ISSUES AND STANDARD OF REVIEW ...............................2

STATEMENT OF THE CASE............................................................................4

SUMMARY OF ARGUMENT ...........................................................................7

ARGUMENT ...................................................................................................9

I.      THE DISTRICT COURT ERRED IN DENYING APPELLANT'S REQUEST TO HAVE THE JUDGMENT AGAINST IT VACATED BECAUSE THE JUDGEMENT WAS VOID ..............................................12

    A.   The District Court Lacked Personal Jurisdiction Over Appellant ............12

    B.   Actual Notice is Not a Substitute for Service of Process .........................18

    C.   The Default Judgment Against Appellant is a Violation of Appellant's Due Process Rights...................................................................................21

    D.   Appellee Failed to Plead and Prove that Appellant was the Defendant's Alter Ego...................................................................................................26

       1.   Appellant is not an "alias" of the Defendant .......................................27

       2.   Appellee failed to establish that Appellant is the defendant's alter ego 28

          a.   The Second Circuit's alter-ego test...................................................32

          b.   Connecticut's alter-ego test ..............................................................34

3. Appellee's untimely, informal allegations too are insufficient ............35

4. Because Appellee failed to establish that Appellant is the defendant's alter ego, Appellee's failure to serve or notify Appellant was fatal ............37

E. The District Court's Denial of Appellant's Request to Have the Judgment Vacated was an Abuse of Discretion .................................................41

1. The Judgment Should Have Been Vacated Under Rule 59(e) ............41

2. The Judgment Should Have Been Vacated Under Rule 60(b)(4).........45

3. The Judgment Should Have Been Vacated Under Rule 60(b)(6).........46

II. THE DISTRICT COURT ERRED IN DENYING THE MOTION TO INTERVENE BECAUSE IT BASED ITS DECISION ON ERRORS OF LAW AND INACCURATE READINGS OF THE EVIDENCE ...............48

A. The District Court's Denial of the Motion to Intervene was an Abuse of Discretion.........................................................................................49

1. The district court's ruling was plagued with erroneous views of the law and crucial errors in assessment of the evidence ...........................49

a. Timeliness .......................................................................50

b. Appellant as an independent legal entity ...........................52

CONCLUSION AND RELIEF SOUGHT ............................................................56

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ......................................57

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Adobe Systems Inc. v. Feather*,
   895 F.Supp.2d 297 (D.Conn. 2012) .....................................................44

*Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc.*,
   187 Conn. 544 (1982)..........................................................................31

*Armco, Inc. v. Penrod-Stauffer Bldg. Systems, Inc.*,
   733 F.2d 1087 (4th Cir. 1984)..............................................................20

*Burda Media, Inc. v. Viertel*,
   417 F.3d 292 (2d Cir. 2005)............................................ 3, 21, 25, 45, 47, 54, 55

*Carimi v. Royal Carribean Cruise Line, Inc.*,
   959 F.2d 1344 (5th Cir. 1992)..............................................................20

*Central Vermont Public Service Corp. v. Herbert*,
   341 F.3d 186 (2d Cir. 2003)................................................................46

*Chien v. Barron Capital Advisors LLC*,
   509 Fed.Appx. 79 (2d Cir. 2013) ......................................... 41, 48, 49

*Davis v. Mara*,
   587 F.Supp.2d 422 (D.Conn. 2008) .....................................................13

*Hansberry v. Lee*,
   311 U.S. 32  (1940) ............................................................................14

*In re Holocaust Victim Assets Litigation*,
   225 F.3d 191 (2d Cir. 2000)................................................. 2, 49, 50

*KLM Industries, Inc. v. Tylutki*,
   75 Conn. App 27 (2003).......................................................... 31, 32

*Mann v. Castiel*,
   681 F.3d 368 (D.C. Cir. 2012) .................................................. 14, 15

*Mason v. Genisco Tech. Corp.*,
   960 F.2d 849 (9th Cir. 1992)..............................................................14

*Mid-Continent Wood Products, Inc. v. Harris*,
　936 F.2d 297 (7th Cir. 1991) ................................................................19

*Mullane v. Central Hanover Bank & Trust Co.*,
　339 U.S. 306 (1950) .............................................................................22

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
　526 U.S. 344 (1999) .............................................................................53

*Myers v. City of Hartford*,
　No. Civ. 3:03CV652 (PCD), 2003 WL 22742250 (D.Conn. Nov. 19, 2003) .....19

*N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*,
　968 F.2d 250 (2d Cir. 1992) .................................................................44

*Nelson v. Adams USA, Inc.*,
　529 U.S. 460 (2000) ................................................... 21, 22, 23, 24, 26

*O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*,
　340 F.3d 345 (6th Cir. 2003) ...............................................................14

*Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*,
　484 U.S. 97 (1987) ...............................................................................13

*Ortiz v. Gaston County*,
　277 F.3d 594 (1st Cir. 1992) ...............................................................42

*Padilla v. Maersk Line, Ltd.*,
　721 F.3d 77 (2d Cir. 2013) .............................................................. 3, 41

*Rogers v. Koons*,
　960 F.2d 301 (2d Cir. 1992) .................................................................43

*Schwartz v. Liberty Mut. Ins. Co.*,
　539 F.3d 135 (2d Cir. 2008) .................................................................42

*Sieg v. Karnes*,
　693 F.2d 803 (8th Cir.1982) .................................................................19

*Southern New England Telephone Co. v. Global NAPs Inc.*,
　624 F.3d 123 (2d Cir. 2010) ..................................... 29, 30, 32, 34, 38

*Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*,
   996 F.2d 1366 (2d Cir. 1993) ............................................................44

*U.S. v. Pitney Bowes, Inc.*,
   25 F.3d 66 (2d Cir. 1994) ...............................................................51

*United Student Aid Funds, Inc. v. Espinosa*,
   559 U.S. 260 (2010) ......................................................................45

*Vazquez-Robles v. CommoLoCo, Inc.*,
   757 F.3d 1 (1st Cir. 2014) .................................................. 15, 22, 25

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
   486 U.S. 694 (1988) ......................................................................12

*Way v. Mueller Brass Company*,
   840 F.2d 303 (5th Cir.1988) ............................................................19

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969) ......................................................................39

**Statutes**

17 U.S.C. § 504 (a) ..................................................................... 43, 47

**Rules**

Fed. R. Civ. P. 24(a)......................................................................50

Fed. R. Civ. P. 24(b) .....................................................................50

Fed. R. Civ. P. 4 ...........................................................................14

Fed. R. Civ. P. 59(e)............................................................... 2, 41, 42

Fed. R. Civ. P. 60(b)(4)......................................................... 2, 3, 8, 45, 46

Fed. R. Civ. P. 60(b)(6).......................................................... 2, 3, 46, 48

## <u>STATEMENT OF JURISDICTION</u>

Plaintiff filed an amended complaint in the U.S. District Court for the District of Connecticut on October 3, 2012, in which Plaintiff stated that jurisdiction over the subject matter of the action was pursuant to 28 U.S.C. §1332(a)(3), as there was complete diversity of citizenship between the plaintiff and the defendants, and because the amount in controversy exceeded $75,000.00.

On March 4, 2015, Judge Covello denied Intervenor-Appellant CHARLY TRADEMARKS LTD.'s Motion to Intervene. CHARLY TRADEMARKS LTD. timely appealed from that decision on April 17, 2015.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES AND STANDARD OF REVIEW

**Issue no. 1 on Appeal:**

Did the district court err in denying Appellant Charly Trademarks Ltd.'s Motion to Intervene?

**Standard of Review:**

This Court reviews a district court's denial of a motion to intervene with the abuse-of-discretion standard: "We review a District Court's denial of a motion to intervene, whether as of right or by permission, for abuse of discretion. *See, e.g., New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992)." *In re Holocaust Victim Assets Litigation*, 225 F.3d 191, 197 (2d Cir. 2000).

**Issue no. 2 on Appeal:**

Did the District Court err in denying Appellant Charly Trademarks Ltd.'s request to have the judgment against it vacated?

**Standard of Review:**

Appellant requested to have the judgment vacated under three separate bases in the Federal Rules of Civil Procedure: (1) Rule 59(e); (2) Rule 60(b)(4); and (3) Rule 60(b)(6).

This Court reviews a district court's denial of a motion to amend a judgment per Rule 59(e) with the abuse-of-discretion standard: "We review the denial of a

motion to amend the judgment under Rule 59(e) for abuse of discretion. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 150 (2d Cir. 2008)." *Padilla v. Maersk Line, Ltd.*, 721 F.3d 77, 83 (2d Cir. 2013).

This Court reviews a district court's denial of a motion to vacate a judgment per Rule 60(b)(4) with the *de novo* standard, and a denial of a motion to vacate a judgment per Rule 60(b)(6) under the abuse-of-discretion standard: "'Whereas we generally review motions pursuant to the provisions of Rule 60(b) for abuse of discretion, we review *de novo* a district court's denial of a Rule 60(b)(4) motion.'" *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005). "'Under Rule 60(b)(4) a deferential standard of review is not appropriate because if the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4).'" *Id.*

## STATEMENT OF THE CASE

Appellee Betty Harris-Clemons filed a complaint on July 6, 2012.  On April 4, 2013, she filed a second motion to amend the complaint and attached the Second Amended Complaint.  The district court granted the motion on May 29, 2013.  In the Second Amended Complaint, Appellee included "a variety of aliases used by Defendant Charly so that any judgment award after the hearing in damages may be executed against any of Defendant Charly's aliases once."  (Appendix ("A") 88).  One of the alleged aliases was "Charly Trademarks Ltd."

The district court entered default judgment against the defendant on October 2, 2013, and on October 3, 2013 the court amended its order to include the "aliases"—including "Charly Trademarks Ltd."—that Appellee listed in the Second Amended Complaint (A105–A106).

Appellant Charly Trademarks Ltd. is a distinct corporation with its own registered agent and jurisdiction (A115, A302).  However, it was never served and it never received notice of the claims against it.

Appellee soon domesticated its judgment in the Middle District of Pennsylvania, where Network Solutions, LLC ("Network Solutions") is located.  Network Solutions—a domain name hosting company—registered numerous websites for both Defendant and Appellant.  In a demand letter send to the defendant on March 6, 2014, Appellee's counsel threatened to "disconnect the

4

domain names from their servers, and point them to the server of [Appellee's] choosing" if Appellant failed to submit to the demands of the letter, including payment of $113,836.67 (A118–A119).

On March 14, 2014, Appellant's counsel responded with a letter explaining why Appellant is not an "alias" of the defendant, that there is no such "alias" theory that allows one to apply a judgment against one entity to other entities without notice, and demanding that Appellee and Network Solutions therefore immediately stop seizing Appellant's assets (A127–A129). Appellee's counsel responded with a letter in which it stated that "[Appellant] has no damages at this point, since my client has not redirected the domain names from their current servers . . . ." (A137).

However, by March 12, 2014, Appellee and Network Solutions had already seized multiple domains belonging to Appellant, rendering those domains inaccessible (A112, ¶ 6). Appellant's counsel again sent a letter to Appellee's counsel on March 19, 2014, urging that Appellee immediately cease the unlawful taking of Appellant's assets (A139–A140). Despite these repeated requests, Appellee continued to unlawfully take Appellant's assets and took control of yet another domain as recently as April 7, 2014 (A112, ¶ 8). As a result, Appellee has interfered with Appellant's property rights and has threatened to interfere with Appellant's prospective economic advantage and economic relationships.

Because Appellee has taken control of Appellee's domain-name assets and has redirected them so that they no longer reside to the content originally there, Appellee has damaged and interfered with (and continues to damage and interfere with) Appellant's business (A112, ¶ 9).

On May 3, 2014, Appellant filed a Motion to Intervene in which it requested that the court grant the motion and vacate the judgment against Appellant. On March 5, 2015, the court denied Appellant's motion, including the request to have the court vacate the judgment against Appellant.

# SUMMARY OF ARGUMENT

The district court erred in denying the Motion to Intervene because its ruling was based on an erroneous view of the law and an erroneous assessment of the evidence. In the ruling, the court relied almost entirely on the presumption that Appellant, not Appellee, carried the burden of proving that it was a separate legal entity. This was clear error, as both logic and authoritative precedent strongly suggest the burden is on the plaintiff. Under the court's view of the law, a plaintiff could name any person or company in the world as an "alias" of any given defaulting defendant without providing a shred of evidence in support of that claim, and a court would freely enter a judgment against the alleged alias *unless and until* the alleged alias incurred considerable time and expense litigating the issue post judgment. This process is not only terribly inefficient, but more importantly, it is an invitation for due-process violations. As such, it could not possibly be the law, and yet that is precisely what the court has suggested. This legal error is the very basis on which the court denied the Motion to Intervene in a fateful abuse of discretion.

The district court erred in denying Appellant's request to have the judgment against it vacated, because the judgment was void. Appellee never properly served Appellant, a distinct legal entity separate from the defendant, and Appellee never alleged that Appellant was the defendant's alter ego. However, even if she had

alleged such alter-ego liability, she would have fallen well short of meeting the

high standards set in the applicable federal and state tests for alter-ego liability.

Therefore, because Appellee never served Appellant or established alter-ego

liability, she never properly served Appellant with process.  In accordance with

Supreme Court precedent, service of process is a prerequisite to a district court's

exercise of jurisdiction over a defendant, and a judgment against a defendant who

never received service of process is indisputably void.  Therefore, the district's

court's judgment was void because the court never had jurisdiction over Appellant,

and the court's oversight of this legal rule in denying the request to have the

judgment vacated was an abuse of discretion.  (Importantly, however, the Second

Circuit reviews Appellant's Rule 60(b)(4) request under a *de novo* standard.)

# **ARGUMENT**

The enforcement of a judgment against an entity that is not a party and never received notice of the claims against it is an affront to due process of law, one of the most treasured components of our legal system. While it seems unfathomable that a court would allow such a violation to proceed unchecked, that is precisely what happened here. Appellee obtained a default judgment against the defendant and its alleged "aliases," including Appellant. For reasons unknown, when Appellee amended her complaint to add Appellant, Appellee failed to disclose that Appellant is indeed a legal entity distinct from the defendant, opting instead to inaccurately name Appellant an "alias" of the defendant. As a result, the court entered a judgment against an entity that was never served and neither received notice of the claims against it. To make matters worse, Appellee has since seized Appellant's assets in attempt to enforce the judgment, causing immense harm to Appellant's business interests.

Fortunately, there is recourse for wronged parties in such a situation. One tool that a wronged party could use is the motion to intervene, which would allow the party to makes its case for the protection of its interests from the judgment. Another tool is a request to have the court vacate the judgment against the wronged party. A third option, of course, would be for the wronged party to pursue both of the aforementioned options. This third option would allow the wronged party to

seek redress for harms committed and free itself of the shackles of an improperly entered judgment. Confident that the court would uphold the right to due process of law, Appellant pursued this third option. However, the court denied Appellant's motion on both counts, basing its ruling and erroneous statements of law and an inaccurate assessment of the evidence. As a result, Appellee continues to hold Appellant's assets hostage, and Appellant remains burdened by a judgment that was entered against it without any notice whatsoever.

The only possible explanation for Appellee's grave procedural missteps is that Appellant is an alter ego of the defendant. However, Appellee never pled alter-ego liability; instead, in an uncontested filing (where notice was not given to Appellant), she simply stated that Appellant was an "alias" of the defendant, and the court accepted this misstatement without further inquiry. Because Appellee did not plead or otherwise establish the alter-ego theory, she was required to serve Appellant if she wanted to include it as a new defendant. However, Appellee took no such action. Therefore, the district court not only allowed a due-process violation to proceed, but it also entered a judgment against an entity it never had jurisdiction over.

It is also vital to note that Appellee's "alias" theory (which somehow succeeded in the district court) has no basis in either law or logic. Imagine that Appellee had named Apple—not Charly Trademarks Ltd.—an "alias" of the

10

defaulting defendant.  Appellee would have successfully obtained a judgment against Apple, an entirely independent and distinct legal entity, simply because she alleged that Apple was the defendant's "alias" and the court accepted that allegation.  Having never served Apple or provided any notice to Apple whatsoever, Appellee then would have begun seizing Apple's assets and causing severe harm to its business.  Apple would then (understandably) move to intervene in the lawsuit and ask the court to vacate the judgment against Apple because Appellee never proved that Apple was the defendant's alias.  Of course, there would be a due-process violation because Appellee never met her burden of establishing that Apple and the defendant were one and the same entity.  This unlikely scenario would be all the more unlikely were the court to deny the wronged party's requests, and yet that is precisely what happened here.

In summary, the district court abused its discretion in denying the Motion to Intervene, because it based its ruling on plain misstatements of law and inaccurate readings of the evidence.  The court abused its discretion in denying Appellant's request to have the judgment vacated, because the judgment was void.  Appellee never properly served Appellant, a distinct legal entity separate from the defendant, and Appellee never alleged or established that Appellant was the defendant's alter ego.  Therefore, because Appellee never properly served Appellant, Supreme Court

11

precedent mandates that the district court never had jurisdiction over Appellant, and the judgment against Appellant is therefore void.

For the foregoing reasons, Appellant respectfully requests that the Second Circuit reverse the lower court's ruling in its entirety.

## I.    THE DISTRICT COURT ERRED IN DENYING APPELLANT'S REQUEST TO HAVE THE JUDGMENT AGAINST IT VACATED BECAUSE THE JUDGEMENT WAS VOID

For the purposes of highlighting the most critical errors in the district court's ruling (namely those concerning personal jurisdiction, the Federal Rules of Civil Procedure, and due process), this brief will address Appellant's request to have the judgment vacated before addressing the Appellant's request to intervene.

In short, the court abused its discretion in denying the request to vacate the judgment, because the district court never had jurisdiction over Appellant and, as a result, the judgment is void.

### A.    The District Court Lacked Personal Jurisdiction Over Appellant

The U.S. Supreme Court has clearly annunciated the definition and purpose of service of process: "Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988). However, the proper execution of service is not merely a procedural formality

regarding notice; it is *required* for a court to exercise jurisdiction over the intended recipient of service.  The Supreme Court has said as much:

> Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. "[S]ervice of summons is the procedure by which a court . . . asserts jurisdiction over the person of the party served." . . . Thus, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum.

*Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).

In fact, the court below in this matter—the District Court for the District of Connecticut—appears well aware of this principle and has cited the Second Circuit in support: "Because effective service of process on Defendants is a prerequisite to the Court's exercise of personal jurisdiction over them, the insufficiency of service of process on Defendants means the Court lacks personal jurisdiction over Defendants."  *Davis v. Mara*, 587 F.Supp.2d 422, 427 (D.Conn. 2008).

The D.C. Circuit has also emphasized the need for *proper* service of process before a court may exercise jurisdiction over a defendant:

> Under the federal rules enacted by Congress, federal courts lack the power to assert personal jurisdiction over a defendant "unless the procedural requirements of effective service of process are satisfied." . . . Service is therefore not only a means of "notifying a defendant of the commencement of an action against him," but "a ritual that marks the court's assertion of jurisdiction over the lawsuit."

*Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012). Simply put, proper service of process under Rule 4 of the Federal Rules of Civil Procedure is a prerequisite to a court's exercise of jurisdiction over a defendant.

Courts have been equally unequivocal in setting forth the ramifications of a judgment entered absent effective service: the judgment is void. This rule has been long established by the Supreme Court, and it remains in effect across the country today: "It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). In *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir. 1992), the Ninth Circuit referenced this very language and went on to state, "if [the appellee] failed to serve [the appellant] properly in the earlier action, the default judgment is void and has no res judicata effect in this action." In *O.J. Distributing, Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 355 (6th Cir. 2003), the Sixth Circuit held that a district court did not abuse its discretion in setting aside entry of default upon finding that the plaintiff failed to properly effect service of process on the defendant.

Further demonstrating the widespread acceptance of this principle, the D.C. Circuit has stated, "courts have 'uniformly held . . . a judgment is void where the requirements for effective service have not been satisfied.'" *Mann*, 681 F.3d at

372.  Similarly, the First Circuit has held as follows: "Absent waiver or consent, a judgment that is rendered without lawful service of process is null and void." *Vazquez-Robles v. CommoLoCo, Inc.*, 757 F.3d 1, 2 (1st Cir. 2014).

Here, a thorough review of the record confirms that Appellee never properly served Appellant.  On April 4, 2013, Appellee filed a second Motion to Amend Complaint and attached a copy of the intended Second Amended Complaint.  The purpose of this amendment was "to allege that Charly Trademarks, Ltd. is one of the many aliases of Defendant Charly . . . ."  (A89).  While Appellee's position on this matter is rather confusing, it seems her position is that Appellant and the defendant are one and the same, and therefore Appellant either was not entitled to separate service of process, or it received such service at the same time the defendant did.  Appellee is wrong any way she articulates her position.

To support her position, Appellee argues that "CT used CA's address and fax and phone number on the domain name registrations for Licensemusic.com and charly-acquisitions.com."  (A162).  Appellee also says, "CA received notice of the suit, at the same address and fax number where CT used for business.  CT had notice."  (A177).  First, formal service of process is quite distinct from the general concept of notice.  Appellee's position appears to solely concern notice, perhaps because Appellee is well aware that she never formally served Appellant.  Second,

15

even if Appellee in fact meant to argue that Appellant received formal service, she is wrong, and facts on record plainly show that fact.

The contact information that Appellee referred to, which she received from Whois.com, is listed as "Administrative Contact" information on the cited Whois.com reports (A189, ¶ 46). The mailing address listed for Appellant on the Whois.com reports is located in the Channel Islands (A288). To begin with, it is unclear why Appellee believes that administrative contact information that might be shared between two entities is somehow evidence that service of process upon one equates to service upon the other. More importantly, though, the aforementioned Channel Islands address it not an address for service of process at all. Despite Appellee's statement that "CA received notice of the suit, at the same address and fax number where CT used for business" (A177), the Certificate of Service attached to Appellee's second Motion to Amend Complaint (A90) reveals the inaccuracy of that statement.

As the Certificate of Service confirms, the motion and the accompanying amended pleading were mailed *not* to the Channel Islands address (which is allegedly the connection between the defendant and Appellant due to similar administrative contact information), but rather to an address in Nevis (A90). As Exhibit 1 to the Second Amended Complaint (which is the same as Exhibit 1 to the Amended Complaint) verifies, that Nevis address is in fact the address of the

*defendant's* registered agent for service of process (A50). Therefore, Appellee sent the amended pleading not to any address that has been shown to be associated in any manner whatsoever with Appellant, but rather to the defendant's registered agent for service of process.

Like the defendant, Appellant is a distinct corporation and, as such, Appellant has its own registered agent for service of process (A302). Therefore, Appellee had to serve Appellant if she wanted to bring claims against Appellant. To do so, Appellee should have served Appellant's registered agent for service of process. Instead, she served the defendant at the defendant's registered agent's address and now argues that such service amounts to proper service and notice to Appellant. Importantly, Appellee never presented any evidence that Appellant and the defendant share the same registered agent for service of process; this is hardly surprising, given that Appellee did not bother to research Appellant's corporate status at all before blindly reeling the corporation into the lawsuit as an "alias."

Appellee's failure to exert the minimal effort required to determine that Appellant is indeed an independent legal entity is unacceptable and inexcusable. Appellee has said "[i]t borders on the difficult, if not impossible, for Plaintiff to check with a clerk in Charlestown, Nevis or Sark, Guernsey to determine if CA has registered CT as a trade name." (A161). This statement is curious, to say the least, in light of Exhibit 1 to the Second Amended Complaint. That exhibit is a copy of

17

an official letter from a clerk in the Nevis Financial Services Department to Appellee's counsel. In that letter, the clerk provides the name, date of incorporation, corporate status, name and address of registered agent, and other information on the defendant (A50). Moreover, the letter indicates that counsel for Appellee specifically *requested* the aforementioned corporate information. *Id.*

Because Appellee clearly had no trouble obtaining the defendant's corporate information (including the registered agent's name and address), it hardly would have been "impossible"—to use Appellee's word—to do the same for Appellant.

Lastly, there is no waiver of process in this matter to save Appellee from her failure to properly serve Appellant. Rule 4(d)(1) of the Federal Rules of Civil Procedure clearly delineates the requirements for requesting a waiver. Appellee has not met those requirements, nor has Appellee even raised the question of waiver at all. Therefore, there is no dispute that the issue of waiver is irrelevant to this matter, and as per the Supreme Court precedent discussed above, Appellee's failure to properly serve process on Appellant means the district court lacked personal jurisdiction over Appellant, and the judgment is void as a result.

### B.   Actual Notice is Not a Substitute for Service of Process

To be clear, Appellee has not presented a shred of evidence to prove or even so much as suggest that Appellant received any notice whatsoever from the delivery of the motion and amended complaint to the *defendant*'s registered agent.

18

However, even if Appellant did have actual knowledge of the claims brought against it in the amended pleading (which Appellee certainly has not established, as the previous section showed), the district court still lacked personal jurisdiction over Appellant, and the judgment would therefore still be void.

Actual knowledge (or actual notice) is not a substitute for proper service of process. The U.S. District Court for the District of Connecticut has followed the trend in other circuits and adopted this principle:

> Actual knowledge is not . . . a dispositive factor in determining whether process has been sufficiently rendered. *Brown v. Pratt & Whitney Div., United Techs. Corp.,* No. 3:96 CV 0525(GLG), 1997 U.S. Dist. LEXIS 14185, at *8 (D.Conn. Aug. 28, 1997). "A [d]efendant's mere knowledge of a lawsuit, by itself, is insufficient to confer personal jurisdiction over the defendant in the absence of valid service of process." *Id.* (*citing Adams v. Allied Signal General Aviation Avionics,* 74 F.3d 882, 885 (8th Cir.1996)); *Swaim v. Moltan Co.,* 73 F.3d 711, 719 (7th Cir.1996), *cert. denied,*517 U.S. 1244, 116 S.Ct. 2499, 135 L.Ed.2d 191 ("[v]alid service of process comprises more than actual notice").

*Myers v. City of Hartford*, No. Civ. 3:03CV652 (PCD), 2003 WL 22742250, at *3 (D.Conn. Nov. 19, 2003). Citing established law in other circuits, the Seventh Circuit too has held that "it is well recognized that a 'defendant's actual notice of the litigation…is insufficient to satisfy Rule 4's requirements.' *Way v. Mueller Brass Company,* 840 F.2d 303, 306 (5th Cir.1988); *see also Sieg v. Karnes,* 693 F.2d 803, 807 (8th Cir.1982)." *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991).

As the Fifth Circuit has held, "[Rule 4 of the Federal Rules of Civil Procedure] itself does not distinguish between defendants who 'must have known' that they were being served and those who do not understand the import of receiving a summons, complaint, and Acknowledgement. Simply put, delivery is not synonymous with service." *Carimi v. Royal Carribean Cruise Line, Inc.*, 959 F.2d 1344, 1348 (5th Cir. 1992). The Fourth Circuit has similarly held that the specific requirements of Rule 4 simply cannot be bypassed: "When there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." *Armco, Inc. v. Penrod-Stauffer Bldg. Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984).

As established earlier, Appellee has fallen well short of proving that Appellant had any notice whatsoever of the allegations brought against it in the Second Amended Complaint. Appellee served the Second Amended Complaint on the defendant at the defendant's registered agent's address, not Appellant at Appellant's registered agent's address (A50, A90). Moreover, she has not provided any evidence that Appellant and the defendant share the same registered agent for service of process. Therefore, Appellee's suggestion that Appellant received notice and service simply because it might share with the defendant

20

certain wholly unrelated administrative contact information is not only unavailing, but also nonsensical.

### C.   The Default Judgment Against Appellant is a Violation of Appellant's Due Process Rights

Even more critical and more consequential than the violation of the Federal Rules of Civil Procedure discussed above (i.e., the violation of Rule 4 concerning service of process) is the due-process violation in this matter.  Indeed, that due process is implicated here comes as no surprise: "The Federal Rules of Civil Procedure are designed to further the due process of law that the Constitution guarantees." *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 465 (2000).  While Appellee's failure to properly serve Appellant speaks to a violation of civil procedure with serious ramifications discussed above (namely a void judgment), her failure to notify Appellant of the allegations brought against it *at all* speaks to Appellant's constitutional right to due process and the violation thereof.

Due process in the context of notice has a longstanding, well defined meaning in the Second Circuit and the Supreme Court: "Due process requires 'notice reasonably calculated…to apprise interested parties of the pendency of the action.' *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 303 (2d Cir. 2005).  Moreover, "[t]he means employed [for giving notice] must be such as one desirous of actually informing the absentee might reasonably adopt to

21

accomplish it." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). Importantly, a newly added adverse party's "opportunity to respond" to an amended complaint is "fundamental to due process." *Nelson*, 529 U.S. at 466.

The value of due process in our legal system and our society at large, and the fundamental role that service of process plays in facilitating due process, cannot be emphasized enough:

> No principle is more firmly embedded in American jurisprudence than this one: when a claim is proffered that threatens a person's life, liberty, or property, that person is entitled to notice and an opportunity to be heard before a court awards any substantial relief. *See Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In federal court practice, this due process guarantee is facilitated by Rule 4 of the Federal Rules of Civil Procedure—a rule regulating service of process.

*Vazquez-Robles*, 757 F.3d at 2.

The facts in this case merit a discussion of the Supreme Court's very relevant decision of *Nelson*. In *Nelson*, Ohio Cellular Products Corporation (OCP) had sued Adams USA, Inc. for patent infringement. The district court dismissed OCP's claim and ordered OCP to pay Adams' costs and attorneys' fees. Fearing that OCP might be unable to pay the fee award, Adams moved to amend its pleading to add OCP's president and sole shareholder, Nelson, in his individual capacity, as a party from whom fees could be collected. Adams simultaneously asked the court to amend the judgment to make Nelson liable for the fee award. The district court granted Adams' motion in full, and the Federal Circuit affirmed

22

the judgment, holding that Nelson failed to show that "'anything different or additional would have been done' to stave off the judgment had Nelson been a party, in his individual capacity, from the outset of the litigation." *Nelson*, 529 U.S. at 465.

The Supreme Court held that Nelson never received due process. The Court reasoned that Nelson was never served with an amended pleading, nor did he have an opportunity to state his defenses after the court accepted the amendment naming him as a party. *Id.* at 466. As for Nelson's knowledge that he might be subject to personal liability from the moment Adams moved to amend the pleading and alter the judgment, the Court said, "[b]eyond doubt . . . a prospective party cannot fairly be required to answer an amended pleading not yet permitted, framed, and served." *Id.* at 467. The Court stated that Rule 15 and due process "demand a more reliable and orderly course." *Id.* at 461.

Lastly, the Court strongly disagreed with the Federal Circuit's reasoning that things would have been no different had Nelson individually already been added as a party:

> We neither dispute nor endorse the substance of this speculation. ***We say instead that judicial predictions about the outcome of hypothesized litigation cannot substitute for the actual opportunity to defend that due process affords every party against whom a claim is stated. As Judge Newman wrote in dissent: "The law, at its most fundamental, does not render judgment simply because a person might have been found liable had he been charged."***

23

*Id.* at 471 (emphasis added).

Appellee failed to serve Appellant when she amended her complaint to include Appellant. She served the amended pleading on the defendant at the defendant's registered agent's address, an address in Nevis that has not been shown to have any relation to Appellant, an independent legal entity, whatsoever. Moreover, because the aforementioned address is wholly unrelated to Appellant, and that address is the only place the amended complaint was delivered to (except for the address of counsel for Defendant Sony Music Entertainment ("Sony"), to which the amended pleading was also delivered), Appellant did not receive notice of the claims against it until *after* the court entered its judgment. The trivial evidence Appellee presented in its objection to the Motion to Intervene, seemingly to show that Appellant was served or received notice of the allegations against it, is that the defendant and Appellant might share certain administrative contact information in the Channel Islands. However, Appellee served the amended pleading not to any address in the Channel Islands, but rather to the defendant's registered agent in Nevis, and nothing in the record proves or even suggests that Appellant received any notice of the action brought against it at the Nevis address, the Channel Islands address, or otherwise.

It is simply illogical to argue that by serving the amended pleading on defendant's registered agent, a legally distinct corporation (Appellant) with its *own*

24

registered agent received service of process or notice in any other form (even if the defendant and Appellant have the same registered agent). Such an attempt cannot earnestly be said to be "'reasonably calculated . . . to apprise interested parties of the pendency of the action.'" *Burda Media, Inc.*, 417 F.3d at 303. Because Appellant never received notice of the claims against it until after the court entered its judgment, Appellant never received "an opportunity to be heard before a court awards any substantial relief." *Vazquez-Robles*, 757 F.3d at 2.

Lastly, the district court's ruling and the arguments presented by Appellee's counsel strongly suggest an assumption that things would have panned out no differently in the lower court had Appellant been properly served (presumably because, per Appellee's allegations, the defendant and Appellant are one and the same), an assumption that seems to have influenced the ruling greatly (*E.g.*, A367 (the court assuming, based on weak evidence, that the defendant adequately represents Appellant's interests and so Appellant has no right to intervene); A146 (Appellant noting Appellee's counsel's statement—in response to Appellant's counsel's concern that the alter-ego theory was never pled—that Appellant could "substitute the term alter-ego" with "alias" if so desired, implying that the result would be the same). This put the cart before the horse. Fortunately, as shown above, the Supreme Court has addressed such dangerous assumptions and emphasized that due process must not be undermined: "judicial predictions about

25

the outcome of hypothesized litigation cannot substitute for the actual opportunity to defend that due process affords every party against whom a claim is stated." *Nelson*, 529 U.S. at 471.

The district court entered a judgment against a party that received no prior notice of the claims brought against it. The result is a textbook example of a due-process violation that the Second Circuit must not ignore.

### D. Appellee Failed to Plead and Prove that Appellant was the Defendant's Alter Ego

Appellee introduced Appellant to the lawsuit by naming it one of the defendant's alleged "aliases." Perhaps on this basis Appellee believes formal service was not required. Such an argument would be unavailing, however, because Appellant is not the defendant's alias, but is rather an independent legal entity. Moreover, even if Appellee intended to plead that Appellant was the defendant's alter ego (which Appellee did not do), Appellee did not meet the requirements for establishing alter-ego liability. (Incidentally, Appellant cannot determine from the record the basis upon which Appellee sued Defendant Charly Acquisitions Ltd. to begin with. Counsel for Appellee has conceded that Sony could not produce a signed contract with Charly Acquisitions Ltd. (A134). Appellee too has failed to produce—or even come close to proving the existence of—such an agreement by other means. The record therefore mandates a finding that such an agreement never existed, and Charly Acquisitions Ltd.'s involvement

26

in this lawsuit (and the resulting judgment against it) is therefore factually and legally baseless.)

### 1.    Appellant is not an "alias" of the Defendant

Although Appellee alleged that Appellant was the defendant's "alias," Appellee failed to present the legal foundation for this alleged "alias" theory. Appellant itself is unaware of any such theory in the law that allows one to treat party B as identical to party A.  Appellant and the Second Circuit are therefore left with no choice but to follow the colloquial definition of the term: "a false name used to conceal one's identity; an assumed name." *Alias Definition*, dictionary.com, http://dictionary.reference.com/browse/alias (last visited June 21, 2015).  In other words, an alias is another name for a single entity or individual. Riffing on the party A and party B analogy above, an alias does not involve party B.  It is another name for party A (a DBA, in effect), and so notice and service on party A in fact and law serve only party A.

Here, Appellant is, in every sense of the term, an independent legal entity. Therefore, "Charly Trademarks Ltd." is not merely a second name for "Charly Acquisitions Ltd.," but is rather a separate entity altogether.  Appellee's failure to mention this fact in her pleadings is either an egregious suppression of the truth in hopes of bypassing procedural requirements, or a conscious decision to shoot first and ask questions later.  The latter appears true, as Appellee's counsel cavalierly

asserted that alias and alter ego are the same thing (A135). Either way, Appellee's allegation was false, and as a result of this falsity, the district court entered a judgment against an entity that never received due process.

>    **2.    Appellee failed to establish that Appellant is the defendant's alter ego**

Once counsel for Appellant noted that there is no "alias" theory to support Appellee's position that two separate entities can be treated as one, and that the alter-ego theory is the closest legal basis for Appellee's position, Appellee suddenly began using the term "alter ego." In fact, after counsel for Appellant first raised the fact that Appellee never pled or proved that Appellant was an alter ego, counsel for Appellee appeared ignorant of the law: "If you are uncomfortable with the word alias, and can prove these names have legitimate corporate forms, substitute the term alter-ego." (A135). That counsel believes the terms "alias" and "alter ego" can be used interchangeably is alarming, given that the judgment against Appellant rests on this very misunderstanding of the law. The truth, of course, is that there are specific requirements to an alter-ego finding, none of which Appellee established.

In her objection to the Motion to Intervene, Appellee cited the Second Circuit's recitation of New York state law on alter-ego liability (*See* A158). While it is admittedly unclear whether the Second Circuit is to apply federal law or state law to the question of alter-ego liability in federal question cases, what is

28

abundantly clear is that New York state law is irrelevant to this case, which derives from Connecticut. In *Southern New England Telephone Co. v. Global NAPs Inc.,* 624 F.3d 123, 139 (2d Cir. 2010), the Second Circuit addressed alter-ego liability in a federal question case in Connecticut, but declined to answer whether federal law or state law applies. Instead, the Second Circuit provided both the Second Circuit test and the Connecticut test and determined that, because the tests yielded the same result in that case, "[the Second Circuit] need[s] not decide which jurisdiction's law should govern the analysis here." *Id.* For that reason, Appellant will apply both tests to the facts in this case.

Before applying the relevant tests, however, it is critical to note the extreme factual showing necessary to establish alter-ego liability. In *Telephone Co.*, the Second Circuit held that the appellee's thorough allegations of alter-ego liability were sufficient to meet both the federal test and the state test. In doing so, the Second Circuit cited the appellee's countless strong, detailed, and deliberate allegations:

> The complaint alleged that all the Global entities share the same officers and directors, who are also the owners, directors, and officers of Ferrous Miner. The various entities disregard their formal separation in their interactions with each other, according to [the appellee], sharing employees, commingling funds which are used to pay the debts and expenses of each entity indiscriminately, and transferring customers, revenues, and assets amongst themselves without documentation. According to the complaint, while Global NAPs Inc. was the only entity authorized to provide telecommunications service in Connecticut and was [the appellee's]

29

counter-party in the ICA, Global NAPs Networks, Inc. had taken over Global NAPs Inc.'s network functions and customer contracts. [The appellee] asserted, in addition, that Global NAPs New Hampshire, Inc. is the "financial arm" of the enterprise, but has no customers, operations, or employees of its own. [The appellee] charged that the companies' disregard of the corporate form facilitated a situation in which Global NAPs Inc. incurred liabilities, as it had pursuant to its business dealings with [the appellee], but had been stripped of any assets or revenue it might use to satisfy these obligations. [The appellee] alleged that none of the defendants constituted "a stand-alone business" entity, but rather that each was "owned and controlled as part of a single enterprise."

*Id.* at 130–31.

Importantly, the appellee in *Telephone Co.* supported its many specific allegations with declarations and deposition testimony. Not surprisingly, in concluding that the appellee had established alter-ego liability, the Second Circuit indeed cited the fact that the appellee supported its many factual allegations with declarations and deposition testimony. *Id.* at 138.

The Supreme Court of Connecticut has also emphasized the extreme showing required to establish alter-ego liability:

Ordinarily, the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote injustice.' . . . Even though the evidence . . . demonstrates that Lemieux did indeed exercise a considerable amount of control (although he was not a director, officer or shareholder) over the business affairs of Armor, with respect to the specific transaction attacked . . . there is insufficient evidence of Lemieux's dominance or influence such as is required to disregard the separate legal entity of the corporation.

30

*Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc.*, 187 Conn. 544, 557–58

(1982). The court went on to note,

> [i]t is true that courts will disregard legal fictions, including that of a separate corporate entity, when they are used for fraudulent or illegal purposes. Unless something of the kind is proven, however, to do so is to act in opposition to the public policy of the state as expressed in legislation concerning the formation and regulation of corporations.

*Id.* at 559.

The Appellate Court of Connecticut has also emphasized the high burden on

parties seeking to establish alter-ego liability. Distinguishing the facts at hand

from those in cases where the court found alter-ego liability, the court in *KLM*

*Industries, Inc. v. Tylutki*, 75 Conn. App 27, 33–34 (2003) noted,

> [i]n *Davenport v. Quinn,* 53 Conn.App. 282, 730 A.2d 1184 (1999), the trial court pierced the corporate veil of the defendant's corporation because the defendant was the sole shareholder, director and officer of several corporations, did not maintain separate bank accounts for each corporation, used one corporation to pay off the debts of the others and depleted corporate resources to avoid a default judgment.

The court then cited another case to show just how thorough and persuasive

alter-ego allegations must be:

> In *Toshiba America Medical Systems, Inc. v. Mobile Medical Systems, Inc.,* 53 Conn.App. 484, 730 A.2d 1219, cert. denied, 249 Conn. 930, 733 A.2d 851 (1999), this court held that piercing the corporate veil was proper because the defendant, the sole shareholder of two corporations, transferred more than $1.1 million from one of his corporations to another to avoid paying the plaintiff, held no corporate meetings to approve such transactions, did not file any tax returns or other documentary proof with the secretary of the state as to corporate existence, had no employees and had no equipment or property other

31

than an automobile for the defendant's use. . . . The defendant used
corporate funds to pay his personal income tax and permitted his son
to write checks on the corporate account.

*Id.* at 34.

In short, precedent from both the Second Circuit and Connecticut confirms
that a party seeking to establish alter-ego liability carries an exceptionally high
burden and must prove in a pre-judgment or post-judgment proceeding that party B
should be treated the same as party A within substantive alter-ego law.

### a. The Second Circuit's alter-ego test

As the Second Circuit held in *Telephone Co.*, alter-ego liability is
established (and corporate formalities are therefore disregarded) "when a
corporation's owner exercises 'total and exclusive domination of the corporation.'"
*Telephone Co.*, 624 F.3d at 139. *Telephone Co.* concerned related corporate
entities, not individual owners and their corporations, suggesting the
aforementioned test is the applicable one to the facts of this case.

In Appellee's second Motion to Amend Complaint and the accompanying
Second Amended Complaint, Appellee did not come remotely close to
establishing—or even suggesting, for that matter—that Appellant exercised total
and exclusive domination of the defendant. First, Appellee explicitly alleged that
Appellant was merely an "alias," and therefore, because she believed the two
entities to be one and the same, it is literally impossible for her to have argued that

*one* entity dominated *a second* entity. Second, even if Appellee alleged that Appellant was an alter ego or, at least, a separate legal entity with strong ties to the defendant (Appellee did neither of these things), Appellee offered no evidence to suggest one entity totally and exclusively dominated the other. The sole support Appellee offered for an alter-ego theory is the bare allegation that "Defendant . . . is also known as and has done business as . . . Charly Trademarks, Ltd. . . . . Through these aliases, Defendant Charly seeks to exploit artists like Plaintiff and avoid the consequences of its music piracy." (A92, ¶ 6). Appellee said no more on the matter, and attached neither an affidavit nor an exhibit in support of the newly added "allegation." Of course, Appellant was unable to challenge this allegation because it received no notice of the amended pleading, nor did Appellee even attempt to serve Appellant with the amended pleading.

Appellee's subsequent attempts to draw ties between Appellant and the defendant—only in opposition to Appellant's motion below—are both weak and, more importantly, ineffective. Upon learning from Appellant's counsel that the alias allegation is false, Appellee should have immediately sought to amend the judgment and proved the alter-ego claim. Such an amendment could have given Appellant an opportunity to assert a defense. Instead, Appellant received no such opportunity before being hit by a default judgment, and Appellant was forced to bring a motion. Only then did Appellee present additional information (such as

allegedly shared administrative contact information) to support an alter-ego theory that was never pleaded in the first instance.

In summary, Appellee could not have satisfied the Second Circuit's test because she did not even allege that more than one entity was at play. Moreover, even if she had alleged that more than one entity was at play, she presented no support whatsoever for the allegation, let alone evidence of "total and exclusive domination" of one corporation over the other. Therefore, Appellee did not establish (or even attempt to establish) under the federal test that Appellant is the defendant's alter ego.

### b. Connecticut's alter-ego test

In *Telephone Co.*, the Second Circuit explained as follows:

> [u]nder Connecticut's 'identity rule' for piercing the corporate veil, a plaintiff must show 'such a unity of interest and ownership that the independence of the corporations ha[s] in effect ceased or ha[s] never begun, [such that] adherence to the fiction of separate identity would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.'

*Telephone Co.*, 624 F.3d at 139.

For the exact reasons in the previous section, Appellee did not properly plead under the Connecticut test that Appellant is the defendant's alter ego. Specifically, Appellee could not possibly have shown "an operation conducted by one corporation for the benefit of the whole enterprise" because Appellee alleged

that there was only *one* corporation, and that corporation simply had multiple *names* (i.e., aliases). Therefore, Appellee never remotely addressed the question of the "independence" of one corporation from another, because she alleged that there was but one single corporation. Also, even if Appellee somehow did show or imply that multiple corporate entities were related, the absence of any support for such a bare allegation in the Second Amended Complaint (as shown in the previous section) renders the pleading insufficient to satisfy the high standard set forth in Connecticut's "identity rule."

Therefore, Appellee did not establish (or even attempt to establish) under the Connecticut standard that Appellant is the defendant's alter ego.

### 3. Appellee's untimely, informal allegations too are insufficient

Not only did Appellee fail to sufficiently plead alter-ego liability when it mattered (i.e., in the pleadings), but she also failed to do so upon learning from counsel for Appellant that casually using the word "alias" does not equate to an alter-ego finding. In a March 17, 2014 letter to counsel for Appellant, counsel for Appellee stated, "[w]e served the only corporate shell we could find actual proof of existence for, Charly Acquisions, Ltd." (A135). Counsel then wrote, "Paragraph 64 [of the Affidavit of Betty Harris-Clemons, dated April 24, 3013] claimed Defendant Charly held the domain name licensemusic.com under its alias Charly Trademarks, Ltd. Paragraph 65 said 'Through Licensemusic.com, Defendant

35

Charly advertises to the world that it owns rights to license and exploit' Plaintiff's recordings." (A136). In his closing paragraphs, counsel then stated, "If Charly Trademarks, Ltd. is indeed a separate entity and the veil cannot be pierced (which I doubt), Charly Trademarks, Ltd. is in privity with Charly Acquisitions, Ltd. and licensemusic.com, standing in the shoes of a continuing infringer." (A137). Not only are these statements ineffective in that they are both untimely and informally raised post-judgment in a mere letter between attorneys, but they would also be insufficient were they raised properly in court.

That the defendant allegedly held licensemusic.com under "its alias" Charly Trademarks Ltd. does not come remotely close to establishing (or even suggesting) "total and exclusive domination" of one entity over the other (the Second Circuit test). The allegation similarly falls well short of establishing "such a unity of interest and ownership that the independence of the corporations ha[s] in effect ceased or ha[s] never begun" (the Connecticut test). Even if true, the allegation would show nothing more than a mere relationship between the defendant and the Appellant, two entities that—it begs repeating—were never even alleged to be separate entities to begin with. Needless to say, an allegation that two entities might potentially share *certain interests* is hardly enough to show that the two are the same for purposes of alter-ego liability; otherwise, any two entities that shared certain interests would be deemed alter egos of one another.

36

Nor does the following statement carry any weight: "If Charly Trademarks, Ltd. is indeed a separate entity and the veil cannot be pierced (which I doubt), Charly Trademarks, Ltd. is in privity with Charly Acquisitions, Ltd. and licensemusic.com, standing in the shoes of a continuing infringer."  First and foremost, this statement is nothing more than an informal, conclusory allegation in a letter.  Importantly, however, it also raises a few questions: If counsel truly "doubt[s]" that "the veil cannot be pierced," why did Appellee not plead so?  (And why not then pierce the veil?)  If Appellee did not initially understand the strict requirements of an alter-ego pleading, why did she not later amend her pleadings or judgment to correct the error?  Does Appellee truly believe that the bare allegation that Appellant is in privity with the defendant, raised in a letter between attorneys post-judgment, is sufficient to override due process and satisfy her failure to serve or provide notice to Appellant?  The answers to these questions are unclear.  What is abundantly clear, however, is that Appellee either did not know the law or failed to abide by the law on alter-ego liability, and her last-ditch efforts to mask that shortcoming in attempt to enforce a void judgment are simply futile.

> **4.** **Because Appellee failed to establish that Appellant is the defendant's alter ego, Appellee's failure to serve or notify Appellant was fatal**

Because Appellant is indeed an entity distinct from the defendant, and

Appellee did not come close to establishing (or even alleging) that Appellant was the defendant's alter ego under either the federal or state test, Appellee's failure to serve and give notice to Appellant is an inexcusable error.

Appellee might argue that enough evidence exists on the record to prove Appellant is indeed the defendant's alter ego. Admittedly, it is true that "the exercise of personal jurisdiction over an alter ego corporation does not offend due process." *Telephone Co.*, 624 F.3d at 138. Importantly, however, Appellee never established that Appellant is the defendant's alter ego. The meager evidence she presented in support of an alter-ego theory first arose not in the amended pleading at issue, but rather in her objection to the Motion to Intervene. In other words, Appellee (1) filed an amended pleading that made no mention of alter-ego liability and made no attempt to meet the elements of applicable alter-ego tests; (2) received a judgment against Appellant; (3) learned from Appellant's counsel that Appellee's claim is defective because she never pled the alter-ego theory; and (4) presented weak evidence—post-amended pleading, post-judgment, post-Motion to Intervene—in attempt to breathe life into an amended pleading (and resulting default judgment) that had been exposed as defective. Such trial-and-error tactics are entirely improper. If Appellee intended to plead alter-ego liability, she should have done so in the Second Amended Complaint, and if she had failed to do so (which she did), she should have amended the pleading or the resulting judgment

38

in a timely fashion.  Nor can a court just bless a judgment against someone never

provided notice, expressly entered on an alias theory, with some sort of after-the-

fact "well, they are alter egos anyway" assertion.

Fortunately, there is long-standing Supreme Court precedent on the question

of alter-ego liability and the ramifications of improperly pleading it:

> If the alter ego issue had been litigated, and if the trial court had
> decided that HRI and Hazeltine were one and the same entity and that
> jurisdiction over HRI gave the court jurisdiction over Hazeltine,
> perhaps Hazeltine's appearance before judgment with full opportunity
> to contest jurisdiction would warrant entry of judgment against it. But
> that is not what occurred here.

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 111 (1969).  The

Court went on to hold that, because Hazeltine "never had its day in court on the

question of whether it and its subsidiary should be considered the same entity for

purposes of this litigation," the judgment entered against Hazeltine was improper.

*Id.*  (For reference, the trial court's ruling that it had jurisdiction over Hazeltine

was based solely on a stipulation entered between HRI and Zenith that HRI and its

parent, Hazeltine, would be considered one entity for purposes of the litigation.  *Id.*

at 109–10.)

Like Hazeltine, Appellant suffers from a judgment entered by a court that

lacked jurisdiction over Appellant.  Unlike Hazeltine, however, Appellant has not

been shown to be a "parent" company of the defendant, and there was certainly no

stipulation between Appellee and the defendant like that in *Zenith*.  If the alter-ego

39

issue was not properly litigated and decided in *Zenith*, it surely was not properly litigated and decided in this case. Appellee never served Appellant, Appellee never pled that Appellant was an alter ego, and the district court never decided whether Appellant was an alter ego.

Here, moreover, there is no factual basis in the record to look the other way and deem Appellant an alter ego of defendant. Each is a distinct corporation with its own charter (A115, A302). There is no evidence of "total and exclusive domination" of one entity over the other. (In fact, there is no evidence that the defendant owns or controls Appellant at all.) There is no evidence of any "unity of interest and ownership" to even suggest that the independence of the entities has ceased. There is no evidence of commingling of assets or other factual indicia of alter ego.

That each has the word "Charly" in its name and each may be registered in the same jurisdiction does not allow the wholesale discard of basic corporate law principles. Apple, Inc. and Apple LLC have the same name. Are courts to just treat each as an alter ego of the other on that fact alone? Indeed, the very facts that exist in this record only demonstrate that the two are distinct corporations. (Why else are they so registered?). In short, all that happened was the lawless treatment of a distinct corporation as the same as the defendant, an act that even Appellee's lawyer conceded was lawless with his after-the-fact assertion to just consider the

40

as-pled "alias" charge to be a euphemism for "alter ego" (A135), because he really, really believed (despite evidence) that the two are alter egos. No amount of philosophizing on this record can make a silk purse out of a sow's ear.

Therefore, under Supreme Court precedent, the district court lacked jurisdiction over Appellant and the judgment is void.

### E. The District Court's Denial of Appellant's Request to Have the Judgment Vacated was an Abuse of Discretion

In the court's ruling on the Motion to Intervene, issued ten months after the motion was filed, Judge Covello did not even mention either Appellant's Rule 59 argument that the judgment must be vacated, or its Rule 60 arguments to have the judgment voided. This is significant because, as established earlier, the court's judgment was in fact void.

### 1. The Judgment Should Have Been Vacated Under Rule 59(e)

The standard of review for the denial of a Rule 59(e) motion is clear: "We review the denial of a motion to amend the judgment under Rule 59(e) for abuse of discretion. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 150 (2d Cir. 2008)." *Padilla v. Maersk Line, Ltd.*, 721 F.3d 77, 83 (2d Cir. 2013). "'An "abuse of discretion" occurs when a district court "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions."'" *Chien v. Barron Capital Advisors LLC*, 509 Fed.Appx. 79, 80 (2d Cir. 2013).

A review of the record shows that the district court indeed issued its ruling on both an erroneous view of the law *and* a clearly erroneous assessment of the evidence.

Under Rule 59(e), district courts "'may alter or amend judgment [sic] "to correct a clear error of law or prevent manifest injustice."'" *Schwartz v. Liberty Mut. Ins. Co.,* 539 F.3d 135, 153 (2d Cir. 2008). Moreover, Rule 59(e) movants may seek to vacate or reverse—rather than merely amend—judgments. *Ortiz v. Gaston County*, 277 F.3d 594, 597 n.1 (1st Cir. 1992).

In its motion, Appellant clearly set forth both the clear error of law *and* the manifest injustice in the judgment:

> (1) there is no such thing as an "alias" theory that allows a judgment against one party to reach a distinct party because they are alleged in a default proceeding to be aliases; (2) no notice was given to CT; and (3) no showing was made that CT is either directly liable (it was never sued so it does not appear Plaintiff even contends as much) or that it is an alter ego of Defendant.

A152.

While there are therefore multiple errors of law on which to vacate the judgment, perhaps the most critical (and most consequential) is the court's improper exercise of jurisdiction over a party that was never properly served, that never received notice of the allegations against it, and that was never proven to be a factual alter ego of the defendant. It bears repeating that that Supreme Court dictates that proper service of process is required for a court to exercise jurisdiction

42

over a defendant. This is an unmistakable error of law of the highest order. Also, there is perhaps no greater "manifest injustice" than a due-process violation, which is precisely the result of a judgment entered against a party that received no notice whatsoever of the claims brought against it. The district court's failure to acknowledge these legal errors was itself a great legal error amounting to an abuse of discretion.

Importantly, there is yet another critical error of law present on the face of the judgment. As Appellee's claims against the defendant arose from the Copyright Act, Appellee was entitled to damages (if any) as permitted under U.S. copyright law. A well-established rule in copyright law is that a plaintiff is entitled to statutory damages *or* actual damages, but not both. *See* 17 U.S.C. § 504 (a). The statutory language is hardly ambiguous, and both the District of Connecticut and the Second Circuit have long recognized as much: "Alternatively, in place of actual damages and apportioned profits, a copyright owner may elect to recover an award of statutory damages. *See* 17 U.S.C. § 504(c)." *Rogers v. Koons*, 960 F.2d 301, 312 (2d Cir. 1992). "In general, a copyright owner is entitled to recover the actual damages suffered, as well as any profits made by the defendant, that are the result of an infringement. 17 U.S.C. § 504(b). However, under § 504(c)(1) of the Act, an owner may elect to recover statutory damages in lieu of any other form of monetary relief." *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250,

43

252 (2d Cir. 1992). "Under section 504(c)(1), the owner of a copyright may elect to recover statutory damages instead of actual damages and profits. *See* 17 U.S.C. § 504(c)(1)." *Adobe Systems Inc. v. Feather*, 895 F.Supp.2d 297, 302 (D.Conn. 2012). "Once a plaintiff has elected statutory damages, it has given up the right to seek actual damages and may not renew that right on appeal by cross-appealing to seek an increase in the actual damages." *Twin Peaks Productions, Inc. v. Publications Intern., Ltd.*, 996 F.2d 1366, 1380 (2d Cir. 1993).

In a highly unusual move, Judge Covello awarded Appellee both statutory damages *and* actual damages. The judgment reads as follows: "It is ordered and adjudged that the plaintiff recover from the defendant, Charly, damages in the amount of $42,095.62, which represents the amount in damages Charly owes to Harris-Clemons in this action in CD royalties, digital royalties, and statutory damages." (A106). There can be no argument that this judgment flies in the face of clear copyright statutory law and therefore exhibits a clear error of law.

The district court's denial of Appellant's Rule 59(e) motion was based on an erroneous view of the law or, at the very least, an erroneous assessment of the evidence, because the record shows an improper exercise of jurisdiction, a due-process violation, and a clear error of law in the judgment against the defendant and Appellant. The result of the judgment was no less than a clear error of law by the district court and manifest injustice to Appellant. As such, the district court

plainly abused its discretion in denying Appellant's request to vacate the judgment as against it under Rule 59(e).

### 2. The Judgment Should Have Been Vacated Under Rule 60(b)(4)

Appellant pleads this claim in the alternative to the Rule 59(e) request (A151). With regard to Appellant's Rule 60(b)(4) argument to vacate the judgment as against it, the standard of review is different: "'Whereas we generally review motions pursuant to the provisions of Rule 60(b) for abuse of discretion, we review *de novo* a district court's denial of a Rule 60(b)(4) motion.'" *Burda Media, Inc.*, 417 F.3d at 298. "'Under Rule 60(b)(4) a deferential standard of review is not appropriate because if the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4).'" *Id.*

As Appellant set forth in the Motion to Intervene, this is precisely the type of scenario that requires vacating the judgment. As the Supreme Court has held, "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). In terms of timeliness, "'it has been oft-stated that, for all intents and purposes, a motion to vacate a default

judgment as void "may be brought at any time."'" *Central Vermont Public Service Corp. v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003).

As thoroughly established earlier, the district court lacked jurisdiction over Appellant because proper service of process was not executed on Appellant, and because the court lacked jurisdiction, the judgment is void. Seeing as this is a "jurisdictional error," this alone required the district court to void the judgment under Rule 60(b)(4) and the Supreme Court precedent quoted above. However, there is in fact another basis on which the court should have voided the judgment: violation of due process. Because a judgment was entered against Appellant before Appellant received any notice whatsoever of the allegations against it, there was a clear due-process violation. Therefore, both situations in which Rule 60(b)(4) applies (according to the Supreme Court) are present in this action.

Reviewing this case *de novo*, the Second Circuit must hold that the judgment is void as to Appellant under Rule 60(b)(4) and established case law from none other than the U.S. Supreme Court.

### 3. The Judgment Should Have Been Vacated Under Rule 60(b)(6)

Appellant pleads this claim in the alternative to the Rule 59(e) request and the Rule 60(b)(4) request (A151). As set forth in the motion, Appellant is also eligible for relief from the judgment under Rule 60(b)(6). As stated earlier, the

Second Circuit reviews Rule 60(b) motions (except for Rule 60(b)(4) motions) under the abuse of discretion standard. *Burda Media, Inc.*, 417 F.3d at 298.

Rule 60(b)(6) allows for relief from a judgment for "any other reason that justifies relief." In other words, even if the Second Circuit finds that there was no due-process violation and no jurisdictional error (and therefore Appellant's Rule 60(b)(4) argument fails), Appellant can still be relieved of the judgment if there is another reason justifying relief. While Appellant is confident that the record strongly supports its position on the due-process and jurisdictional-error points, there are indeed other critical reasons justifying relief.

First, the unusual circumstances underlying the judgment rendered against Appellant—namely Appellee's act of improperly naming "Charly Trademarks, Ltd." an "alias" in order to allow a judgment against the defendant to bleed through to Appellant—surely provide enough reason for the court to relieve Appellant of the judgment. Second (and perhaps more to importantly), as explained earlier, Judge Covello curiously awarded Appellee both statutory damages *and* actual damages. Statutory law unequivocally provides that a copyright plaintiff is entitled to *either* statutory damages *or* actual damages. *See* 17 U.S.C. § 504 (a). The judgment therefore directly contradicts clear statutory law, and such a judgment surely seems the very type of "other reason" that justifies relief under Rule 60(b)(6).

47

As stated earlier, "'[a]n "abuse of discretion" occurs when a district court "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions."'" *Chien*, 509 Fed.Appx. at 80.

The district court's ruling against Appellant's Rule 60(b)(6) argument (which in fact consisted of no discussion whatsoever) was based on an erroneous view of the law or, at the very least, an erroneous assessment of the evidence in the record, because a clear error of law in the judgment against Appellant (i.e., the award of both statutory and actual damages) is certainly a justifiable reason for relief under the rule. The district court's failure to acknowledge this legal error in ruling on Appellant's Rule 60(b)(6) request was itself a great legal error amounting to an abuse of discretion.

Accordingly, Appellant respectfully requests that the Second Circuit reverse the district court's denial of Appellant's request to have the judgment against it vacated under Rule 60(b)(6).

## II. THE DISTRICT COURT ERRED IN DENYING THE MOTION TO INTERVENE BECAUSE IT BASED ITS DECISION ON ERRORS OF LAW AND INACCURATE READINGS OF THE EVIDENCE

Not only did the district court fail to follow Supreme Court precedent, acknowledge the void nature of the judgment, and protect the due-process rights of Appellant, but it also based its ruling on the Motion to Intervene on clear misstatements of law and the evidence.

## A. The District Court's Denial of the Motion to Intervene was an Abuse of Discretion

The Second Circuit "review[s] a District Court's denial of a motion to intervene, whether as of right or by permission, for abuse of discretion." *In re Holocaust Victim Assets Litigation*, 225 F.3d 191, 197 (2d Cir. 2000). As stated earlier, "'[a]n "abuse of discretion" occurs when a district court "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions."'" *Chien*, 509 Fed.Appx. at 80.

### 1. The district court's ruling was plagued with erroneous views of the law and crucial errors in assessment of the evidence

The district court denied the Motion to Intervene as of right because "the motion was not timely filed" (A366), and because "CT cannot prove that it was a distinct legal entity" (A367). The court too denied permissive intervention because Appellant "failed to prove that it is a distinct legal entity from the existing defendant, CA." (A368). Therefore, the court's ruling essentially rested on two

conclusions. However, the court based those conclusions on erroneous views of the law and critical errors in assessment of the evidence.

### a. Timeliness

The district court incorrectly applied the Rule 24(a) and Rule 24(b) tests for intervention. Both intervention as of right and permissive intervention require that the motion be timely. Fed. R. Civ. P. 24(a); Fed. R. Civ. P. 24(b). In assessing timeliness, the court may consider, *inter alia*, four factors, including "how long the applicant had notice of its interest in the action before making its motion." *In re Holocaust*, 225 F.3d at 198.

The district court held that Appellant did not articulate when it received notice of the lawsuit. (A366). Appellant did, however, explicitly state that it did not receive notice of its interest in the action when the Second Amended Complaint (in which Appellee first raised allegations against Appellant) was filed. (A145). Moreover, the date on which Appellant received notice was entirely clear from the record. In his first letter to counsel for Appellee, counsel for Appellant introduced himself for the first time as Appellant's counsel and explained how Appellant never received notice of its interest in the action (A127–A129). One could therefore deduce by the record that Appellant first received notice of its interest around the date of that letter. In any case, the timeliness factor means little independent of the remaining three factors and the totality of the circumstances.

Noting that parties have been permitted to intervene when the lapse of time between notice and the motion has been as long as two years, and parties have also been denied intervention when the lapse of time has been as short as four months, the Second Circuit has held that "[t]his apparent discrepancy in rulings doubtless is due to the fact that the time lapsed between notice of an interest in pending litigation and an application to intervene is only one of several factors a district court must weigh when deciding the issue of timeliness." *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 71 (2d Cir. 1994).

More importantly, however, the court grossly mischaracterized the law in ruling on timeliness. As the quote above clearly shows, the question is not how long Appellant had notice of *the lawsuit*, but rather how long Appellant had notice of *its interest in the action*. Following the court's misstatement, the court proceeded to discuss addresses, phone numbers, and other information that allegedly shows that notice to the defendant equates to notice to Appellant. The court then said, "CT admittedly conducts its business at the same address where the plaintiff served CA." (A366). This statement and the resulting ruling are undeniably based on an erroneous view of the evidence. To be clear, the record confirms that the court's statement is not correct.

As established earlier, Appellant does not conduct its business where Appellee served the defendant. Appellee served the defendant with the Second

51

Amended Complaint on the defendant's registered agent for service of process (A50, A90.)  That address does not correspond with the contact information the court cited, nor is it even alleged to be a place where Appellant conducts its business.  Even if Appellee served an *earlier* pleading at an address where Appellant conducts its business, that fact would be completely irrelevant.  The question at hand is at what point Appellant had notice of its *interest* in the litigation, and its interest in the litigation was first implicated when Appellee named it an "alias" in the Second Amended Complaint.  Therefore, the Second Amended Complaint—not any preceding pleading—had to be served on Appellant.  Because Appellee did not serve that amended pleading on the defendant at Appellant's place of business, the district court ruled on a critical element of both Rule 24(a) and Rule 24(b) based on a misstatement of the law as well as an erroneous assessment of the evidence.

### b.  Appellant as an independent legal entity

In its discussion of both intervention as of right and permissive intervention, the court repeatedly suggested that the burden was on Appellant, not Appellee, to prove that Appellant was in fact a separate legal entity and not merely an "alias" (*E.g.*, A366 ("[B]ecause CT has failed to establish itself as a separate legal entity from CA, it cannot prove it would be prejudiced by the denial of this motion."); A367 ("CT cannot prove that it was a distinct legal entity and, therefore, it does not

have an interest in the litigation that is distinct from CA and that is impaired by the disposition of this action."); A367 ("CT has failed to provide evidence that it dealt with CA at arms-length, as a separate corporation."); A368 ("The movant has failed to prove that it is a distinct legal entity from the existing defendant, CA.")). With all due respect to the district court, its view on the burden of proof is both legally erroneous and illogical.

It is well established in the Supreme Court that an entity need not participate in an action unless and until properly served:

> Accordingly, one becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend. See Fed. Rules Civ. Proc. 4(a) and 12(a)(1)(A). Unless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights.

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 345 (1999).

Also, Second Circuit precedent helps guide a discussion of the burden of proof here. The question of who carries the burden on a motion to vacate a default judgment based on improper service has produced conflicting answers in the district courts in this circuit. Acknowledging this fact, the Second Circuit said the following: "We now hold that on a motion to vacate a default judgment based on improper service of process **where the defaulting defendant had actual notice** of the original proceeding but delayed in bringing the motion, the defendant bears the

burden of proof to establish that the purported service did not occur." *Burda Media, Inc.*, 417 F.3d at 299 (emphasis added).  Immediately apparent is the qualification that the defendant had actual notice.  Unfortunately, the Second Circuit did not specify who carries the burden if the defendant did *not* have actual notice, which is the scenario here.  While admittedly not necessarily the case, it seems safe to assume that the burden would shift to the plaintiff, because the alternative would produce a terribly inefficient and rather absurd result.

Imagine that Appellee had named Apple—not Charly Trademarks Ltd.—as an "alias" in the amended pleading.  If the burden were on *Apple* to prove that it is in fact a separate legal entity (and therefore service was improper)—as would be the case under the district court's ruling here—the result would be inconceivable.  The district court would simply accept Appellee's allegation that Apple is Charly Acquisitions Ltd.'s alias and enter a judgment against Apple, who received no notice of the allegations against it.  The district court would not question its jurisdiction over Apple unless and until Apple *proved* it was in fact more than the defendant's alias and therefore was improperly served.  This would, of course, require Apple to spend considerable time and money litigating the issue.  If this is the law, then alter ego goes out the window—everyone can claim anyone else is an "alias" and get judgments against others willy-nilly.

Perhaps Apple has the resources to litigate.  But what if the alleged alias weren't as financially well off as Apple?  Is the burden of proof such that a company in that position would be required to risk going broke simply to prove it was never served?  If the burden were truly on the defendant, as the district court held, that would be the very result.  However, if the burden were on the plaintiff, the result would be a much more logical and efficient one: the plaintiff would be required to establish that she properly served the defendant *before* a judgment is entered, and *before* the parties and the court are forced to incur countless additional resources litigating the issue.  The gross inefficiency of the alternative simply cannot be the law.  After all, a plaintiff must always prove B is an alter ego of A the same way it must prove A is liable.  In accordance with *Burda Media* and plain logic, Appellee carried the burden of proving that it properly served Appellant. The district court's decision to place that burden on Appellant evinced an erroneous view of the law and therefore a clear abuse of discretion.

Because the district court based its ruling on the Motion to Intervene on critical errors of law as well as an erroneous assessment of the evidence, the Second Circuit must recognize this fateful abuse of discretion and reverse the court's denial of the motion.

## <u>CONCLUSION AND RELIEF SOUGHT</u>

For the reasons set forth above, the district court should have granted

Charly Trademarks Ltd.'s Motion to Intervene and request to have the judgment

vacated.  Therefore, the district court's decision should be reversed in its entirety.


Dated: July 15, 2015                        Respectfully submitted,


                                            /s/ Peter R. Afrasiabi
                                            Peter R. Afrasiabi
                                            Nima Kamali
                                            **ONE LLP**
                                            Attorneys for Intervenor-Appellant,
                                            Charly Trademarks Ltd.

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 13,053 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2008 in font-size 14 Times New Roman.


Dated: July 15, 2015

/s/ Peter R. Afrasiabi
Peter R. Afrasiabi
Nima Kamali
**ONE LLP**
Attorneys for Intervenor-Appellant,
Charly Trademarks Ltd.

SPECIAL APPENDIX

**<u>Table of Contents</u>**

<u>**Page**</u>

Order of the Honorable Alfred V. Covello, filed March 5, 2015,
    Appealed From ................................................................ SPA1

Notice of Appeal, dated April 2, 2015 .................................................. SPA10

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**


```
BETTY HARRIS-CLEMONS,           :
  plaintiff,                    :
                                :
      v.                        :  Civil No. 3:12CV00981(AVC)
                                :
SONY MUSIC ENTERTAINMENT,       :
ET AL.,                         :
  defendants.                   :
```

<u>**RULING ON MOTION TO INTERVENE**</u>

Charley Trademarks, Limited (hereinafter "CT"), has filed a motion to intervene in this breach of contract, copyright infringement and unfair trade practices action.  CT argues that the default judgment against the defendant, Charley Acquisitions, limited (hereinafter "CA"), does not apply to it because CT is a separate legal entity and was not properly served.  For the reasons that follow, the motion is denied.

<u>**FACTS**</u>

The complaint, docket of this case and the parties' memoranda and exhibits reveal the following facts.

On July 6, 2012, the plaintiff, Betty Harris-Clemons, filed the complaint in this case against the defendant, Sony Music Entertainment (hereinafter "Sony").  On October 3, 2012, the court granted the plaintiff's motion to amend the complaint to add the defendant, CA.  Harris-Clemons alleges that she sang on

various sound recordings from 1964-1969, including the song "Nearer to You," to which she owned the copyright.

In 2006, Christina Aguilera published a compact disc set through the defendant, Sony. The set included a song titled "Understand" which uses a "vocal sample" of the plaintiff's song "Nearer to You." Sony negotiated a license for the right to the song "Nearer to You" from the defendant, CA. The plaintiff alleges that CA was not authorized to license the song to Sony or anyone else. Sony agreed to pay a royalty fee of 5 cents per use. Sony placed all royalties for use of the song into a sample account because of the dispute over its ownership.

On November 29, 2012, the court granted the interlocutory judgment of interpleader and directed that the defendant, Sony, deposit the funds in the sample account, with the clerk of the court for the clerk's deposit into an interest bearing account.

On December 27, 2012, the plaintiff filed a motion for default with respect to the defendant, CA, pursuant to federal rule 55(a), because despite being served, CA failed to file an answer or respond to the amended complaint. On January 2, 2013, the court granted the motion for default against CA. On January 3, 2013, the plaintiff filed motions for judgment as to all counts against CA. On January 25, 2013, the court granted the motions for default judgment against CA.

On April 4, 2013, the plaintiff filed a second motion to amend/correct the complaint, which the court granted absent objection.  On October 3, 2013, the court rendered an amended judgment in the amount of $110,765.43 against CA and noted the aliases for CA, including CT, as described in the plaintiff's motion to amend.

On December 27, 2013, the plaintiff and the defendant, Sony, filed a stipulation of dismissal as to the counts against Sony and the court adopted the stipulation on December 30, 2013.

On May 3, 2014, counsel for Charley Trademarks, Ltd. ("CT") filed an appearance in this case.  CT seeks to intervene in this case and argues that the default judgment against it is improper.

CT admittedly conducts its business at the same address where the plaintiff served CA.  Further, the plaintiff cites, and the movant does not oppose, the fact that CT owns charleyacquisitions.com and, as of January 14, 2014, charly records.com was registered to CT at the same address that license music.com, and entity owned and operated by CA, was registered.  CT uses the same address, fax and phone number as that for licensemusic.com and charly-acquisitions.com.  The email contact for charlyrecords.com, owned by CT, is william.rowley@charly-acquisitions.com, and is the same address listed for licensemusic.com, owned by CA.

3

## STANDARD

Federal Rule of Civil Procedure 24, provides, in relevant part, as follows:

(a) **Intervention of Right.**  On timely motion, the court must permit anyone to intervene who:
   . . .
   (2) claims an interest relating to the property or is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

 (b) **Permissive Intervention.**
   (1) *In General.*  On timely motion, the court may permit anyone to intervene who:
      . . .
      (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24.  In order to be entitled to intervene as a matter of right, therefore, the movant must "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action."  In re Holocaust Victim Assets Litigation, 225 F.3d 191, 197 (2d Cir. 2000). A "[f]ailure to meet any of these requirements suffices for a denial of the motion."  Id. at 197-98.

## DISCUSSION

## I. Intervention As A Matter of Right

The movant first argues that its motion is timely because it did not have notice of this lawsuit or the judgment against

4

CA.  CT states that based upon the "totality of the

circumstances" there is no prejudice to the plaintiff because CT

is just trying to prevent the plaintiff from unlawfully taking

its assets.  CT states that it is not an alias of CA and that

the plaintiff should have served CT separately or proved that CT

was CA's alter ego. CT states that it has an interest in this

litigation and that its interest is impaired by the plaintiff

seizing its assets.  According to CT, its interests as a

separate legal entity from CA are not being adequately

protected.

     The plaintiff responds that CT's motion is untimely because

it had notice of this lawsuit through its alter-ego CA and that

CT has failed to establish itself as a separate legal entity

from CA.  Specifically, the plaintiff argues that CT and CA are

different names for the same company and that CT has failed to

provide sufficient proof to the contrary.

     In its reply, and in support of its argument that it is a

legally distinct entity from CA, CT submits a "Certificate of

Renewal" from the island of Nevis, which states that CT paid its

annual fee for the period ending January 29, 2014.  CT maintains

that it is a separate legal entity and was never properly

served.  It states that just because the plaintiff served CA at

the same address where CT conducts business, does not mean that

CT was properly served.

In order to be entitled to intervene as a matter of right, the movant must "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action." In re Holocaust Victim Assets Litigation, 225 F.3d 191, 197 (2d Cir. 2000). With respect to timeliness, the second circuit has recognized that the court considers, inter alia, "(1) how long the applicant had notice of its interest in the action before making its motion; (2) the prejudice to the existing parties resulting from this delay; (3) the prejudice to the applicant resulting from a denial of the motion; and (4) any unusual circumstance militating in favor of or against intervention." In re Holocaust Victim Assets Litigation, 225 F.3d 191, 198 (2d Cir. 2000) (citing United States v. Pitney Bowes, Inc., 25 F.3d 66, 70 (2d Cir. 1994)).

On April 4, 2013, the plaintiff filed a second motion to amend/correct the complaint which the court granted absent objection. On October 3, 2013, the court rendered an amended judgment in the amount of $110,765.43 against CA and noted the aliases for CA, including CT, as described in the plaintiff's motion to amend. On May 3, 2014, the CT filed a motion to intervene.

The court concludes that the motion was not timely filed.
First, the movant fails to specifically articulate when it
received notice of the lawsuit.  It only states that "(n)one of
this occurred with any notice to CT . . . ." (emphasis omitted).
However, CT admittedly conducts its business at the same address
where the plaintiff served CA.  Further, the plaintiff states,
and the movant does not oppose, the fact that CT owns
charleyacquisitions.com and, as of January 14, 2014, charly
records.com was registered to CT at the same address that
license music.com, and entity owned and operated by CA, was
registered.  CT uses the same address, fax and phone number as
that for licensemusic.com and charly-acquisitions.com.  The
email contact for charlyrecords.com, owned by CT,
[william.rowley@charly-acquisitions.com](mailto:william.rowley@charly-acquisitions.com), is the same address
listed for licensemusic.com, owned by CA.  With respect to
prejudice, permitting intervention at this stage of the
litigation would prejudice the plaintiff and because CT has
failed to establish itself as a separate legal entity from CA,
it cannot prove it would be prejudiced by the denial of this
motion.  Finally, with respect to timeliness, this case presents
an "unusual circumstance militating . . . against intervention."
Id. at 198 (citing United States v. Pitney Bowes, Inc., 25 F.3d
66, 70 (2d Cir. 1994)).

Even if the movant could prove that its motion was timely, the court concludes that it fails with respect to the remaining factors for intervention as of right.  CT cannot prove that it was a distinct legal entity and, therefore, it does not have an interest in the litigation that is distinct from CA and that is impaired by the disposition of this action.  CA adequately represents CT's interests here.  CA and CT use identical address and contact information and CT has failed to provide evidence that it dealt with CA at arms-length, as a separate corporation. Although CT submits a certificate of renewal, the renewal only includes the date of the renewal, January 20, 2014, and fails to specify the original date that CT was formed.  In addition, the court concludes that the renewal in and of itself is insufficient, in light of the surrounding facts, to establish CT as a separate legal entity from CA.

## II. <u>Permissive Intervention</u>

CT next argues that it should be permitted to intervene pursuant to the concept of permissive intervention and the provisions of Federal Rule of Civil Procedure 24(b).

The plaintiff argues in opposition that CT fails to meet the provisions of rule 24(b) for the same reasons it failed to meet the intervention as of right provisions of rule 24(a). Specifically, the plaintiff argues that CT and CA are not separate legal entities and, therefore, CT does not have a

defense to the main action in which the court entered default judgment against CA.

Federal Rule of Civil Procedure 24(b) provides that, "(o)n timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b).

The court concludes that the facts of this case do not warrant permissive intervention.  The movant has failed to prove that it is a distinct legal entity from the existing defendant, CA.  Therefore, it does not have a claim that is separate from those that are already the subject of the judgment in this case.

<u>CONCLUSION</u>

The motion to intervene (document no 75) is DENIED. Further, the plaintiff's request for the payment of costs and fees in opposing the motion is denied.

It is so ordered this 4th day of March, 2015 at Hartford, Connecticut.

_____/ s/_____
Alfred V. Covello
United States District Judge

9

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| BETTY HARRIS-CLEMONS,<br><br>           Plaintiff,<br><br>     v.<br><br>SONY MUSIC ENTERTAINMENT and<br>CHARLY ACQUISITIONS LTD.,<br><br>           Defendants. | CIVIL ACTION NO.:<br><br>3:12-CV-981 (AVC)<br><br><br><br>April 2, 2015 |

**NOTICE OF APPEAL**

Notice is hereby given that Intervenor-Defendant Charly Trademarks Ltd. in the above-named case hereby appeals to the United States Court of Appeals for the Second Circuit from both holdings of an order (Court Doc. No. 88) denying Charly Trademarks Ltd.'s Motion to Intervene, which order was signed on the 4th day of March, 2015 and entered in this action on the 6th day of March, 2015.

Dated:  April 2, 2015

By:_____/s/ John L. Altieri, Jr._____

John L. Altieri, Jr. (CT Bar No. 06183)
BOUTIN & ALTIERI, P.L.L.C.
1261 Post Road
Fairfield, CT 06824
Tel.: (203) 292-6882
Fax: (603) 432-7419
Email: jaltieri@boutinlaw.com


Peter R. Afrasiabi (*pro hac vice*)
ONE LLP
4000 MacArthur Boulevard
East Tower, Suite 500
Newport Beach, California 92660
Telephone:   (949) 502-2870
Facsimile:    (949) 258-5081
E-mail:       pafrasiabi@onellp.com
California Bar No.: 193336

Attorneys for Intervenor-Defendant,
Charly Trademarks Ltd.


## CERTIFICATE OF SERVICE

I, John L. Altieri, Jr. hereby certify that on April 2, 2015, I served true and correct copies of the foregoing Notice of Appeal on counsel for Sony Music Entertainment and Betty Harris-Clemons by electronically filing the same via ECF.


By:   _____/s/  John L. Altieri, Jr._____
          John L. Altieri, Jr.


2